668 So.2d 214 (1996)
Brian Walter KIPP, Appellant,
v.
STATE of Florida, Appellee.
No. 94-00091.
District Court of Appeal of Florida, Second District.
January 19, 1996.
Rehearing Denied February 15, 1996.
*215 A.R. Mander, III, of Greenfelder, Mander, Hanson, Murphy & Dwyer, Dade City, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
DANAHY, Acting Chief Judge.
In Florida, when a suspect is undergoing a custodial interrogation and equivocally indicates that he wishes the interrogation to cease, thus invoking his right to remain silent under Article I, Section 9, of the Florida Constitution, the interrogating officer must terminate further questioning except that which is designed to clarify the suspect's wishes. Traylor v. State, 596 So.2d 957 (Fla. 1992), and Deck v. State, 653 So.2d 435 (Fla. 5th DCA 1995). But see Davis v. United States, ___ U.S. ___, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (for Federal Fifth Amendment purposes questioning may continue until and unless the suspect unequivocally invokes his right). The appellant argues that the only evidence used to convict him of murder and robbery was obtained in violation of his Florida constitutional right. We agree and reverse.[1]
In December 1992, while police were investigating the murder of James Boyington in Zephyrhills, Florida, suspicion fell on the appellant and a companion who were in Georgia using credit cards issued to Boyington, driving a car registered to Boyington, and staying in a hotel room under the name of Boyington. Georgia authorities took the appellant into custody and began interrogating him. They began their first interrogation at 9:30 p.m. by informing the appellant of his Miranda rights. The appellant freely spoke to them but gave little useful information except that he maintained he was Boyington. The interrogation ended and the appellant was allowed to return to his cell to sleep. Several hours later, at 3:50 a.m., the detectives woke him and commenced a second interrogation without again informing him of his Miranda rights. The appellant, at the beginning and at various other points during the interview, either equivocally or unequivocally *216 invoked his right to remain silent.[2] The detectives disregarded his request to terminate the interrogation and continued questioning him, eventually eliciting a confession that the appellant was involved in the events leading up to Boyington's death.
A third interrogation occurred around 8:00 a.m. when detectives from Florida arrived. The Florida detectives re-Mirandized the appellant and he repeated the incriminating statements made during the second interrogation. At the appellant's trial for the murder of Boyington no detective who interviewed the appellant testified, but the tapes made of the three interrogations were played to the jury. The jury found him guilty of murder in the second degree and of robbery.
We find that during the first interrogation no error occurred because the appellant was properly informed of his rights and waived them. The problem in this case begins with the second interrogation and carries over to taint the third one as well. Inasmuch as the incriminating evidence was obtained during these latter two interrogations in violation of Traylor, the trial court erred in failing to suppress this evidence.
When the appellant, undergoing a custodial interrogation, made his first equivocal invocation of his right to terminate the questioning during the second interrogation, the Georgia detectives continued the questioning without clarifying this equivocal invocation of his right to remain silent. Traylor; Owen v. State, 560 So.2d 207 (Fla.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990); Deck v. State. This was a violation of Traylor. The Florida detectives, although they properly informed the appellant of his rights before they began questioning him for the third interrogation, were the unwitting recipients of the Georgia detectives' violation of the appellant's Traylor rights.
The Traylor error committed during the second interrogation carried over into the third interrogation. As the Florida Supreme Court explained in Gore v. State, 599 So.2d 978 (Fla.), cert. denied, 506 U.S. 1003, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992), when a suspect exercises his right to remain silent, this does not create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject. Id. at 981, n. 5 (citing Michigan v. Mosley, 423 U.S. 96, 102-03, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)). If the right to remain silent had been "scrupulously honored" when it was first invoked, then the statements subsequently made pass the first threshold of the test for voluntariness. In Gore, the first invocation of the right to remain silent had been "scrupulously honored" by the federal officials who first interrogated him. Therefore, when the Florida officials interrogated him seven days later and informed him of his Miranda rights, the statements Gore made after he waived those rights were properly admitted into evidence.
The scenario of Gore is not similar to the scenario in the instant case. The appellant's invocation of his right to remain silent at the beginning of the second interrogation was not "scrupulously honored" so the evidence obtained during the third interrogation must be considered involuntarily given as well, especially since the third interrogation took place on the heels of the second and under the circumstances here. See Henry v. State, 574 So.2d 66 (Fla.1991) (outlining the various factors to consider in determining the voluntariness of statements subsequently given after the right to remain silent has been invoked). The purpose of Miranda is to prevent "repeated rounds of questioning to undermine the will of the person being questioned." Id. at 70 (quoting Michigan v. Mosley). We conclude that the appellant's will was seriously undermined during both the second and third interrogations by the continued questioning of the detectives disregarding his equivocal invocation of his right to remain silent. Traylor. Thus, it was error to allow into evidence the appellant's statements obtained during the second and third interrogations.
*217 Since the taped statements were the only evidence of the appellant's involvement in this crime, we further conclude that the state has not carried its burden under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), to show the error was harmless. Accordingly, we reverse the judgment of guilt, vacate the sentence, and remand for a new trial with the incriminating evidence from the second and third interrogations suppressed.
PARKER and FULMER, JJ., concur.
NOTES
[1] The appellant also contends that it was error to admit a gruesome videotape of the victim's body taken just before the autopsy was conducted and that the trial court erred in failing to determine whether the appellant's relinquishment of his right to testify was done knowingly and voluntarily. We find no error in these points raised and affirm as to them.
[2] The appellant and the state dispute whether this invocation of his right to remain silent was equivocal or unequivocal. We assume for purposes of this opinion that it was an equivocal invocation of his right to remain silent. If it was an unequivocal invocation of his right to remain silent, no one disputes that clear error occurred.